JONESBORO TRUST COMPANY *v.* NUTT.

Opinion delivered May 3, 1915.

1. SALE OF CHATTELS—PATENTED ARTICLE—CREDIT SALE—NEGOTIABLE NOTE.
—All negotiable notes, given in payment for any patented machine, implement, substance or instrument of any kind or character whatever, when the vendor effects the sale of the same to any citizen of this State on a credit, or in payment of any patent right or patent right territory, are required to be executed upon a printed form showing upon its face that it was executed in consideration of a patented machine, etc., and no person shall be considered an innocent holder of such instrument, notwithstanding he may have paid value therefor, before maturity, and all such notes not showing on their face for what they are given are absolutely void. (Kirby's Digest, § § 512-516).

2. CITIZENS—RESIDENTS—PROTECTION OF THE LAW.—A resident in the State doing business here, is entitled to the same protection from the laws of the State as though he were in fact a citizen.

3. CITIZENS—RESIDENTS.—The word "resident" held to be synonomous with "citizen" within the meaning of Kirby's Digest, § § 512-516.

Appeal from Craighead Circuit Court, Jonesboro District; *J. F. Gautney,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant brought this suit in the justice court against E. K. and S. M. Nutt, upon two promissory notes for $150 each, dated February 3, 1913, one due April 3 and the other June 3, after date.

Defendants failed to appear in the justice court and judgment by default was rendered against them from which they appealed.

In the circuit court they answered, alleged that the notes sued on were given as consideration for the sale and delivery of portable pantries, a patented article, and the exclusive right to sell same in Greene County and that they were void, not being executed upon a printed form as required by law. Sections 513, 516, Kirby's Digest.

Also that the consideration for the notes had failed and that the trust company was not a *bona fide* purchaser thereof.

The notes sued on were exhibited with the complaint and are alike, except as to date of payment, and read as follows:

"$150.00          Jonesboro, Ark., February 3, 1913.

June 3, 1913, after date, for value received, we promise to pay to the order of W. J. Gooch, One Hundred and Fifty Dollars. At the Bank of Jonesboro, with interest at 8 per cent per annum, from date until paid. If the interest be not paid when due, to become as principal and bear the same rate of interest. The makers and endorsers of this note hereby severally waive presentment for payment, notice of nonpayment, protest, and consent that time of payment may be extended without notice thereof.

Due.............................................................

P. O...........................................................

    No. 3549.

    .........................Miles............................"

                                       E. K. Nutt.

                                       S. M. Nutt.

The testimony shows that appellees made a written contract with the Portable Pantry Company, of which W. J. Gooch was manager, by which said company appointed E. K. Nutt exclusive agent or dealer to sell the Portable Pantry in Greene County, with the right to select another county of similar size if the number of pantries contracted to be sold could not be sold in that county. This contract gave to said Nutt the sole and exclusive privilege of selling the Portable Pantry until February 3, 1914, with power to transfer any or all parts of the same.

It was stipulated that he, as such dealer, should have the privilege of ordering from the factory, at the prices stipulated in the manufacturer's, The Cincinnati Stamping Co.'s, contract with the Portable Pantry Company, a copy of which was also given him.

He was to confine his operations to the field specified and not to sell the pantry for less than the designated prices, retail and wholesale. After canvassing the

territory thoroughly, he was to place the pantry on sale "with as many merchants as he may see practicable in said section," furnishing them at the wholesale price and have the profits derived from such sales, which were to be remitted to him by the Cincinnati Stamping Co. after being received by it. He was required to notify the Portable Pantry Company of all merchants contracted with and of any other parties to whom he gave authority to order pantries from the factory, stating the price at which they were to receive the goods, etc.

It was also stipulated: "As an evidence of good faith, and determination on the part of said dealer to carry out the intents and purposes of this appointment, he has this day made an advance payment of $2 each on Portable Pantries aggregating $300, the receipt of which is hereby acknowledged, for which we have issued to him 150 Portable Pantry Coupons No. 116-E and he is hereby authorized to use said coupons in ordering pantries from factory, and we guarantee that the Cincinnati Stamping Company will accept same at $2 each when accompanied by $6 in payment for one Portable Pantry," and the notes sued on were accordingly executed to make the advance payment of $300.

The contract of the Portable Pantry Company with the Cincinnati Stamping Company of Cincinnati, Ohio, relating to the manufacture of the portable pantries contains this stipulation:

"We agree and hereby obligate ourselves to the Portable Pantry Company, to furnish same in good order, f. o. b. Cincinnati, Ohio, at $10 each, or at $8 each when order is accompanied by a portable pantry coupon.

We will furnish the Portable Pantry Company certain coupons covering all advance payments made to us by said company from time to time on this contract, and we will accept said coupons at their face value as part payment on separate pantries shipped to said company or its legal representatives, but only at the rate of one coupon with each pantry."

E. K. Nutt testified that he went to appellant Trust Company on the date the contract was executed, Feb-

ruary 3, 1913, had a conversation with Mr. Hall, its cashier, and informed him of the execution of the notes and the consideration therefor. He did this because he knew Mr. Gooch with whom he had been working, had been selling other notes to the Trust Company, but had agreed with him that he would not sell these notes until a shipment of the pantries had been received. A copy of the letters patent issued to W. J. Gooch for the portable pantry was also introduced in evidence.

S. M. Nutt testified that he was the indorser of the notes and interested in the contract and also that the pantries were to be made in Cincinnati, Ohio, and the Portable Pantry Company was not an Arkansas corporation.

The cashier of the Trust Company stated that he knew W. J. Gooch, bought the notes from him on February 14, 1913, and had not had any conversation prior to that time with E. K. Nutt about them and did not know of any defense to the notes. He discounted the paper 10 per cent and first learned of the consideration for the notes some time after May 31.

It was admitted that both appellees are residents of the State and not merchants.

The court directed a verdict in favor of appellees and from the judgment thereon this appeal is prosecuted.

*Baker & Sloan,* for appellant.

The notes sued on do not come within the provisions of the statute, Kirby's Dig., § § 513, 516.

1. There was no sale of any article. The contract signed by appellee was a mere dealer's appointment. The notes were given not as consideration for such appointment, but for the purchase price of coupons. The transaction did not constitute a *sale* of any of the portable pantries. 1 Mechem on Sales, § 1; 27 Ia. 160, 173; 47 Ark. 460, 463. It was purely optional with appellee whether or not he would purchase any cabinet or cabinets. It was a mere option to buy. 28 Atl. 220, 159 Pa. 142; 120 Ia. 218, 94 N. W. 469, 470; 123 Fed. 9, 11; 28

Mont. 468, 72 Pac. 978, 981; 104 Ark. 459, 465; 82 Ark. 573; 78 Ark. 306; 171 S. W. 1183; 87 Ark. 400.

2. The statute by its own terms is applicable only to sales on credit. There was no sale on credit here, but, if it was a sale at all, it was partly for cash and partly on credit and the statute would not apply. The statute should be strictly construed and nothing should be taken by intendment.

3. The transaction was not shown to have been with a citizen of the State. A showing that one is a resident of the State is not proof that he is a citizen.

4. As to this transaction, the act would be unconstitutional as an attempted regulation of interstate commerce. 136 U. S. 326-328, 34 L. Ed. 455, and cases cited; 17 Am. & Eng. Enc. of L. (2 Ed.) 107, and cases cited; 227 U. S. 389, 33 Sup. Ct. 294; 135 U. S. 100; 34 L. Ed. 128.

*T. A. Turner,* for appellee.

1. The transaction constituted a sale within meaning of the statute, and since the notes conform to the requirements of the statute they are void. Kirby's Dig., § § 513, 514; 75 Ark. 328; 203 U. S. 347; 86 Ark. 159; 87 Ark. 555; 67 Ark. 575.

2. There is no merit in the contention that there was no sale on credit within the meaning of the statute. 86 Ark. 155.

3. No question was raised in the lower court as to appellee's citizenship. However, the record at least discloses that they were residents of this State, and the words "resident" and "citizen" will be treated as synonymous. 11 Ohio 28.

4. The act is constitutional. 60 Ark. 118; 75 Ark. 328; 203 U. S. 347; 86 Ark. 159; 207 U. S. 251; 102 Ark. 568.

Kirby, J., (after stating the facts). (1) This case is controlled by the decisions in *Tilson* v. *Gatling,* 60 Ark. 118, *Columbia County Bank* v. *Emerson,* 86 Ark. 159, *Mullins* v. *Columbia County Bank,* 87 Ark. 555, and *Ensign* v. *Coffelt,* 102 Ark. 568. Said cases all arose out of

transactions governed by the law requiring "negotiable notes given in payment for any patented machine, implement, substance or instrument of any kind or character whatever, when the vendor effects the sale of the same to any citizen of this State, on a credit" or "in payment of any patent right or patent right territory" to be executed upon a printed form showing upon its face that it was executed in consideration of a patented machine, etc., and providing that no person shall be considered an innocent holder of such instrument, notwithstanding he may have paid the value therefor before maturity "and all such notes not showing on their face for what they are given, shall be absolutely void." Sections 512, 513-516, Kirby's Digest.

This act has been held constitutional by our court in said cause and by the United States Supreme Court in *Ozan Lumber Co.* v. *Union County National Bank of Liberty,* 207 U. S. 251.

Appellant contends that the contracts do not evidence the sale of a patented article "or patent right territory" but only give Nutt, the agent, an option to buy the portable pantries, for sale in the prescribed territory.

It insists also that the testimony does not show that appellees are citizens of the State within the meaning of the act having the right to the benefit of its provisions. The contract between the parties stipulated that Nutt, the dealer, as an evidence of his good faith, etc., had made an advance payment of $2 each on 150 portable pantries, aggregating $300, the receipt of which was acknowledged, for which he was issued 150 portable pantry coupons No. 116-E, and was authorized to use said coupons in ordering said pantries from the factory and the pantry company guaranteed that the manufacturer, the Cincinnati Stamping Company would accept said coupons at $2 each when accompanied by $6 in payment for one portable pantry, and the contract between the manufacturing company and the pantry company shows that the manufacturer was to furnish the pantry company certain coupons

covering all advance payments made the manufacturer by said company, under the contract, which coupons were to be accepted at their face value as part payment on separate pantries, shipped to the pantry company or its legal representatives at the rate of one coupon with each pantry. These notes were executed to cover the advance payment for said 150 pantries agreed to be delivered to Nutt which he was employed by the terms of. the contract to sell in Greene County and were given in part payment for the patented machine or article sold on a credit within the meaning of said statute. *Columbia Bank* v. *Emerson, supra.*

The contract recites that the pantry company "does hereby appoint E. K. Nutt of Jonesboro, Arkansas, sole and exclusive dealer to sell the portable pantry, etc.," and it is admitted that both parties are residents of the State of Arkansas.

(2-3) The recital of the contract shows one of the appellees to be a citizen of the State, and a resident of the State doing business here, is entitled to the same protection from our laws as though he were in fact a citizen. The word "citizen" is often used in common parlance to denote an inhabitant or resident and the word "resident" may well be considered synonymous with citizen, within the meaning of said statute, the purpose of which is to protect all those residing in the State from imposition and fraud. *McKenzie* v. *Murphy,* 24 Ark. 159.

It follows that the court did not err in instructing the verdict, and the judgment is affirmed.